UNITED STATES v. RUNDELL et al.

No. 575, Equity.

(Circuit Court, E. D. Oklahoma. September 12, 1910.)

INDIANS (§ 27*)—INDIAN LANDS—ALLOTMENT—TRANSFER—ACTIONS.

Act March 2, 1888, c. 188, 28 Stat. 907, provided for the allotment in severalty of land in the reservation of certain confederated tribes in northeastern Oklahoma, subject to the provision that the allotted land should not be alienable for 25 years from and after the patent. *Held* that, where a patent was issued to an allottee under such act expressly prohibiting alienation for 25 years, the United States had capacity to sue in equity to enforce such restriction, and to set aside a conveyance in violation thereof, without joining the allottee in his lifetime, and could also maintain such action after the allottee's death without joining his heirs, at any time during the restricted period, in case the heirs attempted to convey in violation of the restriction.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 27.*]

In Equity. Bill by the United States against John E. Rundell and others. Demurrer to bill overruled.

Paul A. Ewert, for the United States.

W. H. Kornegay and H. H. McCluer, for defendants.

CAMPBELL, District Judge. This is a suit by bill in equity, instituted by the United States of America against John E. Rundell and others, seeking to have set aside certain conveyances, and to have decreed as invalid a certain judgment of the United States Court for the Northern District of Indian Territory, sitting at Wagoner, of date May 19, 1899. The land involved was originally the allotment of Pe-te-lon-o-zah, or William Wea, a member of the confederated Wea, Peoria, Kaskaskia, and Piankeshaw tribes of Indians, being a portion of the lands formerly held in common by said tribes in what is now northeastern Oklahoma. By the patent from the United States to said allottee, dated April 8, 1890, it was provided:

"That said lands shall not be alienated or subject to levy, sale, taxation, or forfeiture for a period of twenty-five years from the date hereof, and any contract or agreement to sell or convey said land before the expiration of said period, shall be absolutely null and void, to have and to hold the said land with the appurtenances thereunto belonging to the said Pe-te-lon-o-zah, or William Wea, and to his heirs, forever, with proviso as aforesaid."

It is alleged that the allottee, William Wea, died intestate in January, 1894, seised of said lands, and that thereafter the defendant Rundell

procured certain persons, who claimed to be the heirs of said allottee, to execute deeds to him for said land, and that he also fraudulently caused to be instituted in the said United States Court for the Northern District of Indian Territory a certain action, wherein said purported heirs were plaintiffs and the said Rundell was defendant, and fraudulently procured a judgment to be rendered by said court, adjudging and decreeing the validity of a certain contract on the part of said heirs to convey said land to the defendant Rundell, and such conveyance and those subsequently made by defendant Rundell and his grantees, and the judgment of said court it is now sought to have set aside by this proceeding.

To the bill the defendants the Miami Investment Company, and George E. Bowling have demurred. By the demurrer it is urged that complainant has no interest in the matters and things alleged in the bill, and no right, title, interest, or claim in or to the lands described therein entitling it to maintain this suit or obtain the relief sought; that complainant is in no sense guardian of said allottee or his heirs, and has no right, authority, duty, or function, either in its own right or as sovereign or guardian, entitling it to maintain the suit; that it does not appear that the complainant or the tribe or the heirs of the said allottee, or any person of Indian blood, has any right, title, or interest in or claim to said land, or in the matters and things set forth in the bill; that it does not appear that the heirs of the said allottee ever requested the complainant to bring the suit; and that less than the jurisdictional amount is involved.

Since the argument and submission of this case upon the demurrer, the United States Court of Appeals for this circuit has rendered its decision in the case of United States v. Allen et al., 179 Fed. 13. In that case, as in this case, the United States have brought suit in their own name, without joining the allottees, to cancel and set aside certain alleged unlawful conveyances of restricted Indian allotments of members of the Five Civilized Tribes. The point was there made by the defendants that the United States, having divested itself of every vestige of the title to such allotments, not even holding the legal title in trust, as in the case of allotments made under the general allotment act of 1887 (Act Feb. 8, 1887, c. 119, 24 Stat. 388), they had no such interest in the suits as entitled them to maintain the actions. The court said:

"The Supreme Court of the United States, in the case which carried the emancipation of the Indians and their property to the fullest extent, expressly recognizes the right of the government to enforce, by appropriate action in court, the restraints which it imposed upon the alienation of Indian allotments. The court says in the Heff Case, 197 U. S. 489, 509, 25 Sup. Ct. 506, 512, 49 L. Ed. 848: 'Undoubtedly an allottee can enforce his right to an interest in the tribal or other property (for that right is expressly granted), and equally clear is it that Congress may enforce and protect any condition which it attaches to any of its grants. This it may do by appropriate proceedings in either a national or state court. * * * Many a tract of land is conveyed with conditions subsequent. A minor may not alienate his lands; and the proper tribunal may at the instance of the rightful party enforce all restraints upon alienation.' Under the general allotment act of 1887, a provisional patent was issued to the allottees, and the naked legal title retained in the government for the period of 25 years. In the case of

the Five Civilized Tribes, this plan was modified to the extent of granting the legal title to the Indian, but imposing upon it a restraint against alienation. These plans present simply differences of method. The object sought in each case was the same, namely, to clothe the Indian with such title to the property as seemed best calculated to encourage his industrial development, and yet accompany this grant with such a restriction as would prevent the main reliance of the government for the industrial betterment of the Indian from being defeated by the alienation of the property. The right of the government to invoke the aid of its court to prevent the defeat of its object is the same under the one statute as the other. Its right to maintain a suit to prevent the defeat of its allotment scheme under the general law of 1887 is fully sustained in United States v. Rickert, 188 U. S. 432, 23 Sup. Ct. 478, 47 L. Ed. 532. It is contended, however, in the present case, that that decision is not controlling, because there the government held the legal title to the property for a period of 25 years in trust for the Indian, but subject to a restraint upon alienation, whereas here the legal title has been conveyed to the Indian. The decision in the Rickert Case does not rest upon a principle of the law of real property, but upon the power of the nation to enforce its own measures. At page 444 of 188 U. S., at page 478 of 23 Sup. Ct. (47 L. Ed. 532), the right of the government to maintain the suit is declared to rest, not upon the fact that it held the title to the property, but, to use the language of the court, upon 'the injurious effect of the assessment and taxation complained of upon the plans of the government with reference to the Indians.' In either case it is not a right of property which is enforced, but a plan of government. The Supreme Court there declares the right of the nation to maintain a suit for the enforcement of its policy in regard to Indian allotments to be too plain for argument. 188 U. S. 444, 23 Sup. Ct. 478, 47 L. Ed. 532. This statement is approved in McKay v. Kalyton, 204 U. S. 458, 467, 27 Sup. Ct. 346, 51 L. Ed. 566."

If in the case of the Five Civilized Tribes, the mere placing of restrictions by the government upon the allotments expressed a governmental policy, which the United States, in their own name, without joining the allottees, can enforce in this court, then, in my judgment, the same result must follow the placing of the 25-year restriction against alienation under which the allottee in this case took his allotment.

Does the restriction period of 25 years run with the land, or is it personal to the allottee, and does that cease with his death? The language of the act is:

"The lands so allotted shall not be subject to alienation for twenty-five years from the date of the issuance of patent therefor, and said lands so allotted and patented shall be exempt from levy, sale, taxation, or forfeiture for a like period of years." Act March 2, 1889, c. 422, 25 Stat. 1014.

As we have seen, this provision is incorporated into the patent. In the case of the Quapaw Indians, a neighboring tribe, the act of Congress providing for the allotment in severalty of their lands (Act March 2, 1888, c. 188, 28 Stat. 907) authorized the Secretary of the Interior to issue patents to the allottees in accordance with the provisions of the act, with the proviso that such allotments should be inalienable for a period of 25 years from and after the date of such patents. The patents issued pursuant to this act read that the United States—

"does give and grant unto the said [patentee], and to [his or her] heirs, the said tract above described, but with the stipulation and limitation, contained in the aforesaid act, that the land embraced in this patent shall be

inalienable for the period of twenty-five years from and after the date hereof, to have and to hold the same, together with all the rights, privileges, and immunities and appurtenances of whatsoever nature thereunto belonging, unto the said [patentee], and to [his or her] heirs, forever, provided as aforesaid that said tract shall be inalienable for the said period of twenty-five years."

In the case of Goodrum v. Buffalo, 162 Fed. 817, 89 C. C. A. 525, decided by the Circuit Court of Appeals for this circuit, the court say:

"The language of the statute under which the patent was issued to John Medicine is 'that said allotments shall be inalienable for a period of twenty-five years from and after the date of said patents.' It is a limitation attached to and running with the land, in no wise dependent upon the life or death of the patentee. It was as much within the policy and purpose of the government to see that the heirs of the allottee, in case of his death, were protected against alienation of the land, as the allottee himself; otherwise, they might become a charge upon the public, and the beneficent policy of the government in bringing about the allotment of lands in severalty would be thwarted."

The terms of the two acts, so far as they imposed restriction upon alienation, are essentially similar, and I can conceive of no such difference in the character of holding by the Quapaw allottee and that of the allottee in this case as would make this any less a restriction running with the land than that of the Quapaw. If, then, the United States might, during the life of the allottee, come into this court for the purpose of enforcing the restriction against alienation, and to set aside a conveyance made in violation thereof, without joining the allottee, they may also maintain such action after the death of the allottee, without joining his heirs, at any time during the continuance of the 25-year restriction period, in a case where the heirs have attempted to convey in violation of such restriction. Nor can the judgment of the United States Court for the Indian Territory, involved in this case, be said to be of any more binding effect to overcome the restriction provision than can the judgment of the United States Court for the Indian Territory, involved in the case of Goodrum v. Buffalo.

In the light of the two controlling decisions of the Circuit Court of Appeals for this circuit, heretofore cited, the demurrer must be overruled. It is so ordered.